## PARRISH *et al. v.* TOWN OF ADEL.

1. When a statute confers the appointing power, and does not expressly authorize self-appointment, the appointment of some other than self is always contemplated.
  (a) The charter of the Town of Adel (Acts 1900, p. 202) provides for the appointment of three citizens who are freeholders, by the town council, as tax-assessors. The town council appointed the tax-assessors from their own body. Such appointment was illegal.
2. Though the general rule is recognized to be that a person who enters into an office and undertakes to perform the duties thereof by virtue of an appointment or election, though ineligible to the office, may be an officer de facto, so as to render his acts valid as to third persons, yet where the commission or record evidencing the appointment shows on its face that the appointment is without legal authorization, the appointee is not an officer de facto, so as to make his acts legal.
NOVEMBER 11, 1915.

Petition for injunction. Before Judge Thomas. Berrien superior court. April 1, 1915.

*Hendricks, Mills & Hendricks* and *J. P. Knight,* for plaintiffs.
*C. E. Parrish,* for defendant.

EVANS, P. J. Certain taxpayers sought to enjoin tax executions issued against them by the Town of Adel, on the ground that the assessment of the tax was made by an illegally appointed board of assessors. The court refused an injunction.

The charter of the Town of Adel (Acts 1900, p. 202) provides, "That the town council of said town shall have full power and authority [to prescribe] the manner of giving [in] the taxes of said town, to appoint three citizens of said town, who are freeholders

thereof, as tax-assessors of said town, whose duty it shall be to place a just, fair, and equitable valuation on the property within the corporate limits of said town, subject to town taxes, whether given in for taxes by the owner thereof or not; to equalize and adjust the taxes of all owners of property in said town; the said board of assessors to give any citizen or property-owners an opportunity to appear before them and make objections to the valuation placed by them upon any piece of property; and if in the judgment of said assessors the valuation first fixed be too high, they may change the same; but in all case the decision of the assessors after the property-owner has appeared before them, or has had notice to appear before them, shall be final. Publication in any newspaper published in said town ten days before the day fixed for hearing complaints shall be deemed sufficient and legal notice under this section." In pursuance of this authority the town council elected the mayor and two of the councilmen as assessors. The petitioners made a return, under oath, of their property at what they deemed to be a fair valuation, and tendered to the proper officer of the town the amount of the taxes calculated at the rate which was levied. The tender was refused, because the valuation fixed by the assessors was in excess of that of the taxpayers' return, and the town demanded the full amount based upon that assessment. The taxpayers' complaint is that the town council had no authority to elect a board of assessors from their own members, and that the board as thus constituted is illegal and without authority to make an assessment for the levy of taxes in that municipality.

It is contrary to public policy to permit an official board having the power to appoint to an office to exercise that power by appointing one or more of their own body. When a statute confers the appointing power and does not expressly authorize self-appointment, the appointment of some other than self is always contemplated. The appointment of the board of assessors by the town council from their own number was an illegal appointment, and the assessors were not de jure officers. *Hawkins* v. *Intendant &c. of Jonesboro,* 63 *Ga.* 527; Mechem on Public Officers, § 112; People v. Thomas, 33 Barb. 287. But it is said that the act of the board of assessors is valid as the act of officers de facto. It is unquestionably true, as a general rule, that a person who enters into an office and undertakes to perform the duties thereof by virtue of an election or appoint-

ment is an officer de facto, though he was ineligible at the time he was appointed. Constantineau on De Facto Doctrine, § 151; *Hinton* v. *Lindsay;* 20 *Ga.* 746; *Gunn* v. *Tackett,* 67 *Ga.* 725. The ground for holding the acts of de facto officers valid rests upon the public policy that the security of property and the vital interests of society demand recognition of acts done colore officii. Many authorities will be found to support the general rule that the mere ineligibility of the officer to an existing legal office will not invalidate his official acts, under the de facto doctrine. But where the commission or record evidencing the appointment shows on its face that the appointment is without legal authority, the ineligibility of the appointee does not depend upon the possibility of that fact being unknown to the appointing power, and the general rule is not applicable to such case. The very power which was exercised in the appointment in this case showed not only that the assessors were ineligible, but also that the appointing power was without authority to make the appointment. In *Hawkins* v. *Intendant,* supra, there was a defect in the election of the intendant and commissioners of the town of Jonesboro, but the incumbents yielded their offices to their successors, who were supposed to have been properly elected. After qualifying as intendant and commissioners they elected from their own number tax-assessors. The charter provided that no tax could be collected by the town authorities until after assessment by three citizens of the town, who were freeholders. Certain taxpayers sought to enjoin the collection of the tax, as being illegally assessed. It was contended that even if there was a defect in the election of the intendant and commissioners, and they were unauthorized to appoint a board of assessors from their own number, still their acts were good as de facto officers. In discussing that question Mr. Justice Bleckley said: "There is, furthermore, this material difference between his situation as a commissioner and his situation as an assessor: his color of right to the former position is not void on its face; the election returns, it may be presumed, neither showed him ineligible, nor the electors unregistered and therefore incompetent to elect him. In other words, the color is not one which vanishes the moment it is inspected. But the color of right to the latter position, if color it can be called, is its own destroyer; it fades away without exposure to anything extrinsic to itself. That he was ineligible appears upon the very resolution by

which he was appointed. The moment he produces his commission it is seen that one of his offices, looked at in the light of the law, is incompatible with the other, and that he has emerged, so to speak, from his own belly. It can not be sound that an officer having, or sharing, the power of appointment to another office, can, on general principles, become the incumbent of the latter, either de jure or de facto." We think the ruling in that case is conclusive of the controlling proposition in the one at bar. The power to appoint citizens who were freeholders of the town did not include the power to appoint themselves as assessors; and when they undertook to enter upon the discharge of a duty under their own self-appointment, they are to be regarded more in the nature of usurpers than de facto officers. One who intrudes upon an office and assumes to exercise its functions, without even the legal title or color of right to do it, is not a de facto officer, and his acts are entirely void.

*Judgment reversed. All the Justices concur, except Beck, J., absent.*